122 Ind. App. 497 (1952)
106 N.E.2d 402
MOULDINGS DIVISION OF THOMPSON INDUSTRIES, INC.
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.
No. 18,299.
Court of Appeals of Indiana.
Filed June 13, 1952.
*498 Gregg, Fillion, Fillenwarth & Hughes, of Indianapolis, by Arthur H. Northrup, for appellant.
J. Emmett McManamon, Attorney General and Glen F. Kline, Deputy Attorney General, for appellees.
MARTIN, J.
The appellee, Clara L. Goff, was employed by the appellant from February 2, 1947, to August 6, 1951, when she was laid off because there was no work available for her. When she went to work for the appellant she registered her home address as 2022 East Maryland Street, Indianapolis, Indiana, which registration she never saw fit to change although, while so employed, she moved to 9 South Pine Street in said city.
Shortly after she was laid off work on August 6, 1951, she filed a claim for unemployment relief with the Employment Security Board and the appellant, as *499 her employer, was duly notified thereof, as required by Burns' 1951 Replacement, § 52-1542a. A reasonable inference to be drawn from the evidence in the present case indicates that in notifying the appellant of said appellee's application for relief above mentioned the division enclosed an unsigned copy of its Forms 500-a, which forms were designated "Employer's Notice of Filing Claim," and upon which her address appeared as 9 South Pine Street, Indianapolis, Indiana. During her employment the appellee earned bonus money and a check therefor was mailed to her by the appellant to the 2022 East Maryland Street address but was returned undelivered. The appellant then examined its files and discovered the Pine Street address as shown on said Form 500-a. The check was thereupon remailed to that address and, although the appellant had no actual knowledge that the appellee received it, the fact is that said check did not return as undelivered.
The conditions of the appellee's employment by the appellant were governed by a bargaining agreement between it and the International Association of Machinists, Local 1449. This agreement required the appellant to recall its employees who had been laid off because of no available work, in accordance with their seniority status, the last employee laid off to be the first recalled. Notice of recall was to be by registered mail, directed to the employee's last known address and in the event an employee failed to respond to recall within three calendar days of the mailing date, said employee's employment would be terminated as having left work voluntarily. Said agreement further provided that "all laid off employees shall be responsible for keeping his address correct and up to date through proper notice to the employer."
*500 On September 18, 1951, the appellant decided to recall the appellee to work and, notwithstanding its experience with the bonus check as above set out and its knowledge of the appellee's then address as indicated upon Form 500-a, it mailed a recall notice to her at 2022 East Maryland Street. She failed to receive this notice but learned indirectly and too late that she had been recalled to work. The result was that the three day period had elapsed before she learned of her recall and upon reporting for work on September 23, 1951, she was informed that she had been removed from the appellant's employment roll as a "voluntary quit." She thereupon filed the claim for relief which we now have before us and, upon the facts above summarized, the Review Board concluded she "did not voluntarily quit work without good cause when her employment relationship was terminated on September 23, 1951" and that she "did not fail without good cause to accept an offer of suitable work mailed under date of September 18, 1951," and is therefore entitled to benefit rights.
The appellant challenges these conclusions as being contrary to law and rests its argument largely on the terms of the contract of employment between it and its employee's bargaining agent and by which the appellee is bound. It says that her failure to receive notice in time to return to work was due entirely to her willful disregard of that provision of the contract which requires that "all laid off employees shall be responsible for keeping his address correct and up to date through proper notice to the employer" and therefore she must be considered as having constructively refused suitable work or, if her relation to the appellant was that of an employee detached from the general labor market but temporarily laid off work, then she was a constructive "voluntary *501 quit." We think that argument would be sound if the spirit of the contract contemplated that the appellant had performed its full duty when it relied on the address furnished by the appellee despite the fact that it knew that she no longer lived there and had reason to believe that she was living at 9 South Pine Street when it mailed notice to her to return to work. In our opinion the contract, when construed in connection with the declared purpose and policy of the Employment Security Act, cannot be given the narrow construction urged by the appellant. The notice required by the contract was "by registered mail to the employee's last known address" and that means the address last known to the employer, notwithstanding an earlier address filed with the employer by the employee and by him left unchanged. After all, we are concerned with due process if the appellee is to be deprived of her rights under the Employment Security Act and due process cannot be said to have been had if one who is required to mail notice to another, or to advise him by some written communication, does so in a manner that does not make it reasonably probable that he will receive actual notice. Wuchter v. Pizzutti (1928), 276 U.S. 13, 72 L.Ed. 446, 48 S.Ct. 259.
It is true that the appellee was remiss in her contractual duty, strictly construed, in failing to inform the appellant of her change of address but is equally clear that the appellant made no good faith effort to give her notice of recall that it was reasonably probable she would receive. The legislature has declared that the payment of unemployment compensation in worthy instances is essential to public welfare, Burns' 1951 Replacement, § 52-1525, and we do not believe, under the facts in this case, the appellee should be deprived thereof.
*502 The order of the Review Board is affirmed.
Royse, J., not participating.
NOTE.  Reported in 106 N.E.2d 402.